IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No: 1:23CR00020-002 |
| Plaintiff, | : | |
| | : | JUDGE TREVOR N. MCFADDEN |
| v. | : | |
| SAUL LLAMAS, | : | **SENTENCING MEMORANDUM** |
| | : | **OF DEFENDANT SAUL LLAMAS** |
| Defendant. | : | |

Now comes Defendant, Saul Llamas, by and through undersigned counsel, Richard J. Perez, Esq., and respectfully submits his Sentencing Memorandum, requesting that this Honorable Court impose a sentence of time served with no further custodial time or, in the alternative, a probation-only sentence in this case. Either sentence is supported by the mandatory § 3553(a) factors, and the facts of this case. Further, a sentence of imprisonment would be contrary to statute and greater than [what is] necessary to achieve the statutory purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).

Respectfully submitted,

/s/ Richard J. Perez
_____
RICHARD J. PEREZ, Esq.
Sup. Ct. Reg. #0010216
Interstate Square Building I
4230 State Route 306, Suite 240
Willoughby, OH 44094
Telephone: (440) 953-1310
Facsimile: (440) 953-1427
rick@perezlaw.com
Counsel for Defendant

I.   **STATEMENT OF FACTS AND PROCEDURAL HISTORY**

Saul Llamas accepted full responsibility in this matter and entered a timely plea of guilty to Count Ten of the Information, Parading, Demonstrating or Picketing in a Capitol Building, in violation of 40 U.S.C., § 5104(e)(2)(G), on May 26, 2023. After his guilty plea accepting responsibility, Mr. Llamas was referred to the Probation Department for preparation of a Presentence Investigation and Report. United States Pretrial and Probation Officer Mitchell T. Shivers prepared a thorough and thoughtful Presentence Investigation Report (PSR) in this case, which was finalized on or about July 17, 2023. The Government had no objections to the PSR and Mr. Llamas had one minor clarification to the report to include that Mr. Llamas completed the Law Enforcement Academy at Lakeland Community College, in Kirtland, Ohio in 2017.

On January 6, 2021, Mr. Llamas demonstrated a lapse in judgement when he followed the crowd of gatherers through the Senate Wing Doors into the Capitol Building with his girlfriend, Ms. Jordan Siemers. Mr. Llamas describes his actions in his letter to this Honorable Court accepting responsibility. *Please see Letter from Saul Llamas, Jr., attached hereto as Motion Exhibit A.* As Mr. Llamas explains, he and Jordan Siemers came to Washington D.C. to attend the freedom rally to enjoy Washington D.C. and to experience the festival-like atmosphere with other patriotic citizens. He did not come to Washington D.C. with any intent on disrupting Congress or stopping the certification of the electoral voting results. Mr. Llamas states:

> I met many fellow hard-working citizens of the United States that day. I met a plethora of pastors, law enforcement officers, veterans of the military, nurses, doctors, and firefighters at the festival prior to the lead up to the walk to the Capitol. I personally did not hear anyone discussing or advocating an attack on the Capitol.

*Id.*

2

Also, Mr. Llamas did not witness the initial breaching of the Capitol as he did not reach the Capitol until approximately 3:00 p.m. due to stopping at a building along Independence Avenue to allow Ms. Siemers to use the restroom. *Id.* Upon his arrival at the Capitol, he observed a line forming of fellow citizens entering the Capitol and he followed the masses into the Capitol. He acknowledges in his letter that this was a mistake, and he is extremely remorseful for allowing himself to be drawn into this parade into the Capitol Building. *Id.*

Once inside the Capitol, Mr. Llamas began to realize that there were citizens inside that were acting unruly and as he describes, "I started to realize the mockery some individuals were making out of the situation." *Id.* After briefly speaking with a Capitol Police Officer inside the Capitol and confirming with this officer that he was not permitted to be inside of the Capitol, Mr. Llamas exited the Capitol after spending approximately nine (9) minutes inside. *Id.* It is uncontroverted that Mr. Llamas did not participate in any violent or destructive behavior during his brief foray into the Capitol on that day. He did not force his way into the Capitol as he walked in through an open doorway. Further, he did not engage with any law enforcement officers on that day. Finally, contrary to other January 6th defendants, Mr. Llamas did not post videos on social media or make inflammatory comments on social media. As such, a sentence of time served, or probation is appropriate given Mr. Llamas' limited involvement in this matter.

As noted below, there is nothing to be gained by sentencing Mr. Llamas to a term of imprisonment in this matter. Mr. Llamas has devoted his career to helping others as he was employed as a law enforcement officer with three (3) separate law enforcement agencies in northeast Ohio at the time of this incident. Mr. Llamas is fortunate to have a loving and supportive network of co-workers, family and friends who are supporting him during this time and will continue to support him if he is given a probation sentence.

3

## II. LAW AND ARGUMENT

### A. Applicable Sentencing Law

In the wake of the Supreme Court's decision in *United States v. Booker,* 543 U.S. 220 (2005), a district court shall impose a sentence that is "sufficient but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. 3553(a)(2). *See United States v. Foreman,* 436 F.3d 638, 644 n.1 (6th Cir. 2006) ("[A] district court's job is not to impose a 'reasonable' sentence. Rather a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)"). The 6th Circuit has recognized that "the sentencing court must make an individualized assessment of the appropriate sentence based on the facts presented" and "the unique circumstances of each case." *United States v. Herrara-Zuniga,* 571 F.3d 568, 585 (6th Cir. 2009). The ABA standard similarly advises sentencing courts to impose, "***the minimum sanction*** that is consistent with the gravity of the offense, the culpability of the offender, the offender's criminal history, and the personal characteristics of an individual offender." *American Bar Association Criminal Justice Standards, Sentencing Standard 18.6.1(a)* (2014) (emphasis added).

In *Gall v. United States,* 552 U.S. 38, 47 (2007), the Supreme Court rejected both "an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range" and "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." The *Gall* Court noted that the sentencing guidelines should only be the "starting point" and the "initial benchmark" of a sentencing proceeding, and that the Guidelines are not the only consideration. *Id.* at 49. Instead, "after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the §3553(a) factors to determine whether they support the sentence requested by a party." *Id.* at 49-50. In doing so, a sentencing judge "may

4

not presume that the Guidelines range is reasonable," but rather "must make an individualized assessment based on the facts presented" at sentencing. *Id.* at 50-51. If the sentencing judge decides that a sentence outside the applicable Guidelines range is justified, the sentencing judge "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.*

After calculating the appropriate sentencing guidelines range, a sentencing court should also consider any motions for departure. Such a motion is distinct from a request for a "variance" from a sentencing guidelines range. Next, after calculating the appropriate advisory sentencing guidelines range and determining whether to grant a departure, district courts must exercise their discretion by considering the relevant §3553(a) factors in determining whether a variance from the guidelines range is justified. When a district court decides to vary from the Guidelines' recommendations, an appellate court "must give due deference to the district court's decision that the §3553(a) factors, on a whole, justify the extent of the variance." *Gall* at 51.

### B. Sentencing Calculations

Mr. Llamas' conviction for a violation of 40 U.S.C. § 5104(e)(2)(G) carries a maximum sentence of six (6) months of imprisonment, pursuant to 40 U.S.C. § 5109(b), a term of probation of up to five (5) years, pursuant to 18 U.S.C. § 3561(c), and a fine of up to $5,000, pursuant to 18 U.S.C. § 3571(b)(6). Further, as part of the Plea Agreement with the Government in this case, Mr. Llamas is agreeing to pay restitution in the amount of $500.00 to the Architect of the Capitol. Although sentencing for this Class B misdemeanor is not governed by the United States Sentencing Guidelines, it is clear that Mr. Llamas has accepted responsibility in this matter by interviewing with law enforcement without counsel and by entering a timely plea before this Court. Additionally, as evidenced by the Presentence Investigation and Report, Mr. Llamas is a law-abiding citizen with no prior criminal convictions either as a juvenile or an adult.

### C. Application of Sentencing Factors

As previously stated, this Honorable Court must apply the factors set forth in 18 U.S.C. §3553(a) in determining Mr. Llamas' sentence. The §3553(a) factors are set forth below and applied to Mr. Llamas and the offense.

**1. The Nature and Circumstances of the Offense and History and Characteristics of Mr. Llamas (§ 3553(a)(1))**

Mr. Llamas pled guilty to a violation of a violation of 40 U.S.C. § 5104(e)(2)(G), a Class B misdemeanor offense. Incarceration is not mandatory for a Class B misdemeanor offense. This provides a strong inference of Congressional intent that not every Class B offender should receive a sentence of incarceration. It allows this Court to exercise its substantial discretion under *Gall* to impose a sentence that includes the full range of sentencing options.

Mr. Llamas has accepted responsibility for his actions and timely entered a plea in this matter before this Honorable Court. Prior to this offense, Mr. Llamas had led a law-abiding life and he graduated from a law enforcement training academy in 2017. Hence, Mr. Llamas is a person who has dedicated his career to helping others. In fact, at the time of his arrest in this matter, Mr. Llamas was employed by three (3) separate law enforcement agencies on a part-time basis. Unfortunately, Mr. Llamas lost all three (3) positions with these police departments as a result of the unveiling of these charges and the resultant media attention in December 2022. Hence, Mr. Llamas has suffered extremely harsh collateral consequences as a result of these charges.

Mr. Llamas also comes from a close-knit family, and he enjoys tremendous support from his co-workers, family and friends. Many of his co-workers, family and friends have felt compelled to author letters to this Honorable Court attesting to the character of Mr. Saul Llamas. Mr. Robert Richardson, a law enforcement officer in Ohio with over twenty-eight (28) years of experience writes to this Honorable Court in support of Mr. Llamas. *Please see Letter from Robert Richardson,*

*attached hereto as Motion Exhibit B.* In his letter, Mr. Richardson opines that Mr. Llamas is a good-natured person who exhibits this behavior in his interactions with others as a law enforcement officer:

> I have known and worked alongside Saul Llamas for approximately four years. At no time have I ever observed Saul act out of the ordinary, or exude any politically driven nature in how he conducts himself with the customers he serves. On the contrary, Saul is very patient, by allowing others to vent and spew their thoughts, thus causing the interaction to de-escalate quickly.

*Exhibit B.*

Several other law enforcement officers authored letters to this Honorable Court attesting to Saul's gentle soul and non-violent character traits. Mr. Kasey Loudermilk, a friend and former co-worker with Mr. Llamas at three (3) different law enforcement agencies, writes in support of Mr. Llamas. *Please see Letter from Kasey Loudermilk, attached hereto as Motion Exhibit C.* Mr. Loudermilk describes Mr. Llamas as, "one of the most honest and kind souls I have met." *Id.* Officer Chris Monda, of the University Hospitals Police Department, who has worked in law enforcement since 1992, also writes to this Honorable Court in support of Mr. Llamas. *Please see Letter from Chris Monda, attached hereto as Motion Exhibit D.* Officer Monda worked with Mr. Llamas for several years and observed Mr. Llamas to be a "great friend and co-worker, always putting other officers as well as the community he served before himself." *Id.* Officer Monda distinguishes Mr. Llamas from other officers that he has observed simply going through the motions, noting that Saul is a caring law enforcement officer who has, "committed himself to serving and protecting many employees, patients and visitors in our network of hospitals." *Id.* Officer Monda shares a compelling story demonstrating the caring nature of Saul Llamas:

> If I may, I would like to share a short story with you on how Saul helped me in a very difficult time. I served eight years in the Marine Corps, infantry in the first gulf war. Saul was my firearms instructor here at the hospital, during a rough time in my life, dealing with PTSD, I was having a difficult time with requalification. Any other

7

> instructor would have just advised the officer to leave the range and to make another attempt on a different day.
>
> Saul went out of his way, spent time with me not just talking, but more importantly listening. Helping me through this was a paramount time in my life, it could have meant absolute failure and leaving law enforcement. Saul was the difference. With his guidance and support, I was able to move forward and succeed.

*Exhibit D.* Finally, Officer Robert Mack, a law enforcement officer with eleven (11) years of experience, authors a letter in support of Mr. Llamas. *Please see Letter from Robert Mack, attached as Motion Exhibit E.* Officer Mack, who worked alongside Mr. Llamas, has found him to be "an outstanding person," who has, "always treated me and others with dignity and respect." *Id.* Officer Mack closes his letter by emphasizing that Mr. Saul Llamas is, "someone that I am glad to have as a friend and someone that I would trust with my life." *Id.*

Several other friends and co-workers felt compelled to author letters to this Honorable Court in support of Mr. Saul Llamas. *Please see Motion Exhibits F-J.* A common theme in these letters is a description of Mr. Saul Llamas as a kind and compassionate human being who worked in law enforcement in order to protect and serve and care for his fellow citizens. Mr. Llamas is an exceptional young man who allowed himself to be drawn into a parade of citizens into the Capitol, however, he did not engage in any violent or turbulent behavior which is consistent with the character that he demonstrates in his interactions with citizens as a law enforcement officer. Mr. Llamas is hopeful that he can regain a position in law enforcement and continue to protect, serve and care for his fellow citizens.

### 2. Sentencing Must Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment (§3553(a)(2)(A))

A sentence of time served, or a probation-only sentence is just punishment for the actions of Mr. Llamas. The United States Supreme Court has recognized that a non-custodial sentence is a serious punishment. The Gall Court recognized that "offenders on probation are nonetheless subject

to several standard conditions that substantially restrict their liberty." *Gall* at 48. The Court noted, "probationers may not leave the judicial district, move or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court." They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. U.S.S.G. §5B1.3. Most probationers are also subject to individual "special conditions" imposed by the court. *Id.* The Supreme Court has expressed that a probationary sentence "rather than an 'act of leniency,' is a 'substantial restriction of freedom.'" *Id.* at 44. As such, a sentence of probation for whatever length of time this court deems appropriate is adequate punishment for the actions of Mr. Llamas on January 6, 2021.

### 3. General and Specific Deterrence (§3553(a)(2)(B))

Mr. Llamas was arrested for the instant offense at his place of employment by United States Marshals in the Northern District of Ohio on November 30, 2022. He was held overnight in a local jail prior to his Initial Appearance the following day in the United States District Court for the Northern District of Ohio where he was released on a $20,000 unsecured appearance bond with various conditions of release, including the requirement to remove all firearms from his residence as well as the surrender of his Ohio Concealed Carry Permit. The arrest and time in jail for a person who has devoted his life to law enforcement was an extremely embarrassing and humbling experience for Mr. Llamas. This period of incarceration will serve as adequate specific deterrence to Mr. Llamas.

### 4. Protect the Public from Further Crimes of the Defendant (§3553(a)(2)(C))

As stated, Mr. Saul Llamas has led an exemplary lifestyle and is a thirty (30) year old young man with no prior criminal history. The public does not need protection from Mr. Saul Llamas. Incarceration in this matter will not assist Mr. Llamas nor society.

### 5. Provide Education, Training and Care (§3553(a)(2)(D))

Mr. Llamas has not previously been treated for any mental or emotional health issues. There are no identifiable substance abuse issues that require treatment. Mr. Llamas has acquired various skills through his law enforcement training over the past six (6) years. Although he has secured alternate gainful employment as a Shipping Clerk during the pendency of this case, Mr. Llamas maintains a strong desire to serve his community in a law enforcement position upon the conclusion of this case. The fact that Mr. Llamas is still desirous of pursuing his career in law enforcement speaks to the strong work ethic and character of Mr. Saul Llamas.

### 6. Kinds of Sentences Available (§3553(a)(4))

Mr. Llamas is a first offender appearing before this Honorable Court for sentencing on a Class B misdemeanor offense. As previously stated, this Court may sentence him to up to six (6) months of incarceration, a term of probation of up to five (5) years, and a fine of up to $5,000. As such, this Court can impose any sentence it believes appropriate under the facts and circumstances of this case and this Court has a wide array of sentencing options.

### 7. Avoid Sentencing Disparities (§3553(a)(6))

Mr. Llamas' conduct in this case is less serious than similarly situated Defendants who have been sentenced for this offense to no further time or a probation only sentence. Hence a probation only sentence or a sentence of time served, will avoid unwanted disparities with other similarly situated January 6th defendants. One such case is *U.S. v. William Blauser, Jr.,* 1:21CR00386 (TNM) (imposing no term of incarceration or supervision on defendant who was a 75-year-old Navy veteran with no prior criminal history who pushed his way into the Rotunda of the Capitol and initially resisted efforts by law enforcement to get him to leave the Capitol). Here, Mr. Llamas did not engage in any violent or turbulent behavior during his brief nine (9) minute foray into the Capitol. In

fact, after his conversation with the Capitol Police Officer, and his resulting realization that he should not be inside of the Capitol, Mr. Llamas quickly located his girlfriend, Ms. Jordan Siemers, and exited the Capitol. Mr. Llamas has demonstrated sincere remorse and contrition in this case. Hence, a probation only sentence or even a sentence of time served, is appropriate for Mr. Llamas.

### 8. Restitution to Victims of Offense (§3553(a)(7))

As part of the Plea Agreement that Mr. Llamas has entered with the Government, he is agreeing to pay restitution in the amount of $500.00 to the Architect of the Capitol. Mr. Llamas will immediately pay this amount upon sentencing in this matter.

Defendant has a stable place to reside with his girlfriend, Ms. Jordan Siemers, in his hometown of Perry, Ohio. His home is situated in a quiet, residential community with an extremely low crime rate. Mr. Llamas can be released on probation with whatever specific probationary conditions that this Court deems appropriate or he can be sentenced to time served in this matter. Either sentence will adequately punish Mr. Saul Llamas for his transgressions on January 6, 2021.

## III. CONCLUSION

For the aforementioned reasons, Defendant, Saul Llamas, respectfully requests that this Honorable Court impose a sentence of time served with no further custodial time. In the alternative, Mr. Llamas respectfully requests a probationary sentence with whatever special conditions this Court deems appropriate. Either sentence is supported by the mandatory § 3553(a) factors, and the facts of this case.

/s/ Richard J. Perez
_____
RICHARD J. PEREZ, Esq.
Counsel for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2023, a copy of the foregoing Sentencing Memorandum was filed electronically with the Clerk of Courts, United States District Court for the District of Columbia, using the CM/ECF system, which is to send notification to Andrew S. Haag, Esq., Counsel for the United States of America.

/s/ Richard J. Perez

RICHARD J. PEREZ, Esq.
Counsel for Defendant